In the Matter of NORMAN TCHERNOFF, Appellant, v. FREDERIC A. DAVIDSON, JR., as Commissioner of the Department of Public Works of the City of New York, et al., Respondents.—

Concur — Markewich, J. P., McNally, Steuer and Macken, JJ.; Kupferman, J., dissents in the following memorandum: The petitioner, a veteran, a graduate of Alfred E. Smith High, formerly known as Bronx Vocational High School, also completed a course in electrical installation and practice in 1965 at Samuel Gompers

Evening Trade School. Although he passed the written and practical tests, he was denied his license as a master electrician by the Electrical Licensing Board of the Department of Public Works, because he had an "erratic and unstable work record" in having held in September, 1963 to March, 1969 15 separate jobs for 11 different employers with some periods of unemployment. The requirement of 5½ years of designated electrical experience (New York City Administrative Code, § B30–9.0) is at best an arbitrary standard to separate the men from the boys. At worst, it is a deprivation of a constitutional right to work while restricting the market of available independent master electricians and thus possibly keeping up prices. Professor Walter Gellhorn of Columbia Law School has well detailed the crazy quilt pattern of the occupational licensing laws in his book entitled Individual Freedom And Governmental Restraints (Louisiana State University Press, 1956) and more specifically in chapter 3, The Right To Make A Living. For example, in occupational licensing, does a man really need to be a citizen in order to be a chauffeur. (*Matter of Magnani* v. *Harnett*, 257 App. Div. 487, affd. 282 N. Y. 619.) In any event, if petitioner is to be deprived of his right to work independently in his chosen profession other than as an employee, it can only be on the basis that the public interest requires it. Here, the only showing is that he had more than the usual number of different jobs and different employers. He claims that it was because work with these employers was not available and also that he wanted more experience. Several employers used him again, so he couldn't have been that much of a problem. However, what was the problem, as far as the public was concerned? Was he unreliable? Unco-operative? Incompetent? Irresponsible? Surly? The board says that if he really wanted more experience, he could have worked for bigger organizations instead of for small contractors — but nowhere in the statute is that required. He worked in his own business for some two years. Perhaps he prefers to be his own boss. He has worked for one organization since January 1, 1969. Clearly, here the record cries out for more detail from his previous employers. The board — if it is to do more than merely keep people out of the profession — should have made further inquiry, or at least called on the applicant to substantiate his explanation. The majority of this court does not disagree with a great deal of the foregoing, but seems to think that we should not substitute our judgment for that of the board. The court below expressed this point of view well in saying: "The court is sympathetic with the petitioner's position. However, the respondents have been charged with the responsibility of investigating and evaluating the character and fitness of the applicant for a license. They have the expertise in the field. On the record, this court might not have reached the same conclusion as the respondents. But such is not the test to be applied." Also, the majority believes the burden was on the petitioner to come forward with additional proof. He certainly had the obligation to come forward with such proof if required to do so; but in this record the board did not request it of him. The determination should be annulled and the matter remanded to the Licensing Board for further hearing.